750 A.2d 786

F.F., AS EXECUTRIX OF THE ESTATE OF T.D., AND F.F., INDIVIDUALLY, PLAINTIFF–RESPONDENT, v. G.A.D.R., L.J.D.P., AND P.A.D.S., DEFENDANTS–APPELLANTS, AND J.P.D., R.E.D., D.H.D., FOR THE ESTATE OF P.A.D., C.P.D. (DECEASED, NO ESTATE REPRESENTATIVE KNOWN), J.T., AND K.K., DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued March 21, 2000—Decided May 15, 2000.

Before Judges MUIR, Jr., CUFF and LESEMANN.

*Shirley B. Whitenack* argued the cause for appellants (*Schenck, Price, Smith & King,* attorneys; *Ms. Whitenack,* of counsel, *Ms. Whitenack* and *Peter A. Marra,* on the brief).

*Ronald Grayzel* argued the cause for respondent (*Levinson Axelrod,* attorneys; *Mr. Grayzel,* of counsel; *Laura M. Le Winn,* on the brief).

The opinion of the court was delivered by

LESEMANN, J.A.D.

Sometime before August 1994, decedent T.D., a hemophiliac, became infected with HIV from the infusion of impure anti-hemophiliac factor blood concentrate (the Factor). The Factor is a commercial product produced by several pharmaceutical companies, many of whom were sued by recipients of contaminated blood. Decedent T.D. filed such an action in the Superior Court of New Jersey. The suit was removed to the United States District Court in New Jersey, and thereafter transferred to the United States District Court for the Northern District of Illinois, where it became part of a class action suit.

On August 12, 1994, decedent died of AIDS as a result of the HIV infection. The suit continued both as a Wrongful Death Action under *N.J.S.A.* 2A:31–1 to –6, and as a survivorship suit, seeking benefits under *N.J.S.A.* 2A:15–3 for damages incurred by the decedent prior to his death.

In October 1996, the class action was settled. Under the settlement, each living person who had been infected by the Factor during the years 1978 through 1985, was entitled to receive $100,000. For any infected person who had died, the $100,000 was to be paid to that person's "claimant group," defined essentially as those persons who would receive derivative claims through the decedent.

Judge John F. Grady of the District Court in Northern Illinois, who had presided over the litigation and settlement, established a procedure for resolving disputes among claimant group members concerning the allocation of the $100,000 payment. Essentially, claimants could either submit their claims to a Special Master appointed by the judge, who would hear the matter and make his recommendation to the court; or alternatively, the claimants could pursue an arbitration procedure to be administered by the American Arbitration Association. While one of those dispute resolution procedures was taking place, all claimants were to sign releases directed to the pharmaceutical companies who were advancing the settlement funds. Each $100,000 payment was then to be held by the MetLife Trust Company under the supervision of the court until disbursed pursuant to the court's order.

The suit on behalf of decedent T.D. had been maintained in Illinois by plaintiff F.F., a sister of decedent, who had also been named as executrix and sole beneficiary under his will. She claimed that the $100,000 settlement proceeds were payable to decedent's estate (and thus to her as sole beneficiary of the estate), and she rejected competing claims by a number of decedent's other siblings. However, instead of proceeding to resolve that dispute via one of the procedures established by Judge Grady, plaintiff filed the present action in Superior Court in Middlesex County, New Jersey.

In an affidavit supporting her New Jersey complaint, plaintiff stated that she brought this action "to establish her exclusive rights to the proceeds" of the settlement. She sought and obtained an order to show cause, asking the court to direct payment of the proceeds to her as executrix of the estate.

The defendants maintain that issues relating to entitlement to the $100,000 should be resolved in Illinois, where the action had been prosecuted and settled, and where the court had established procedures to resolve such disputes. They also deny plaintiff's claim to the settlement funds, noting that at least part of the $100,000 represents settlement of a Wrongful Death Action under

*N.J.S.A.* 2A:31–1 to –6, and the proceeds of such an action are not payable to a decedent's estate.

Following oral argument, the trial court entered an order providing that the settlement funds "are hereby awarded to the Estate" of the decedent. The court then directed that "distribution of the funds by the executrix" shall be stayed for forty-five days "during which time the monies shall be held in the trust account of plaintiff's counsel."

In their appeal, defendants note that, although plaintiff claims the court's order represents only a determination to hold the funds in New Jersey pending final determination as to entitlement, the order actually embodies a determination that the estate—rather than the defendants—are entitled to all of the funds. Defendants claim that determination preempts them from arguing their right to at least a portion of the $100,000, and they argue further that the determination of entitlement should properly be rendered in the Federal Court of Northern Illinois rather than in Middlesex County. We agree with both contentions, and thus we reverse.

The order under appeal seems premised on an assumption that the $100,000 must necessarily belong to decedent's estate, and that any dispute concerning the ultimate receipt of those funds must proceed in the context of administration of that estate. If that is the premise of the order (and we can see no other basis for the trial court's determination), it is clearly mistaken.

The claim prosecuted in Illinois on behalf of decedent T.D. included two distinctly different causes of action. One involved claims for damages suffered by decedent prior to his death. Those claims were recoverable under the so-called Survival Act, *N.J.S.A.* 2A:15–3, which provides for the decedent's executor or administrator to recover such damages as the decedent would have received had he been living.

The second claim prosecuted in Illinois was a Wrongful Death Action maintained under *N.J.S.A.* 2A:31–1 to –6. That

statute applies when "the death of a person is caused by a wrongful act," *N.J.S.A.* 2A:31–1. It provides that the action is to be brought either by an administrator *ad prosequendum* (if the decedent leaves no will) or by the decedent's executor if the decedent does leave a will. However, any proceeds recovered under the Wrongful Death Act are not payable to the decedent's estate. Rather, *N.J.S.A.* 2A:31–4 directs that,

> The amount recovered in proceedings under this chapter shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same. If any of the persons so entitled were dependent on the decedent at his death, they shall take the same as though they were sole persons so entitled, in such proportions, as shall be determined by the court without a jury, and as will result in a fair and equitable apportionment of the amount recovered, among them,....

Thus, as the Court noted in *Schmoll v. Creecy*, 54 *N.J.* 194, 200, 254 *A.*2d 525 (1969), "It has long been settled that the recovery under the wrongful death statute forms no part of the estate of the deceased." That is so because,

> The cause of action for wrongful death and the deceased's own cause of action for personal injuries are separate and distinct claims.... The decedent's personal claim is an asset of his estate; the death claim is not.
>
> [*Ibid.*, N. 34.]

*See also Alfone v. Sarno*, 168 *N.J.Super.* 315, 323, 403 *A.*2d 9 (App.Div.1979), *modified*, 87 *N.J.* 99, 432 *A.*2d 857 (1981), noting that the Wrongful Death Act "created a separate cause of action for the loss suffered by designated beneficiaries," and that the cause of action thus created was "distinct from the survival action" which "gives executors or administrators a right of action for tortious injury or damage to the deceased or his property incurred prior to death."

In short, the court's apparent assumption that the $100,000 settlement proceeds here should be paid to decedent's executor, to be disbursed as part of his estate, is incorrect. The $100,000 must be proportionally allocated between the claims based on the Wrongful Death Act and the Survivor's Act. That conflict is, to some extent at least, inherent in many post-death recoveries since, as the court noted in *Alfone v. Sarno*, "in the usual case both

actions [wrongful death and survival] are joined." *Id.* at 323, 403 *A*.2d 9. The incisive report to Judge Grady submitted by the Special Master here noted:

In cases such as this in which the hemophiliac has died, this typically means survivorship claims of the estate compete with claims for wrongful death. The beneficiaries of the two claims are frequently different and the [dispute resolution] ... procedures adopted by the District Court were intended to resolve these disputes where the parties could not agree upon a fair division among themselves.

Clearly then, the merits of the competing claims to the $100,000 must be resolved before that sum can be paid to any such claimant, including the executor of decedent's estate.

■ The remaining question to be resolved is where that resolution should take place: in the Northern District of Illinois, or in the Superior Court in Middlesex County. It is clear to us that the Illinois Federal Court is the appropriate tribunal to make that decision.

This class action suit was instituted in Illinois, processed in Illinois, and settled in Illinois. Judge Grady, in Illinois, has presided over the matter, has supervised the case and has authority to direct disposition of the settlement proceeds.

The procedures established by Judge Grady are sound and appropriate. The report of Special Master Nicholas J. Bua, provided to Judge Brady and supplied to us on this appeal, demonstrates a firm grasp of the issues in the case, and an accurate knowledge of the appropriate New Jersey law. Under the procedures established by the Illinois court, the dispute between plaintiff and defendants can be resolved either through a report and recommendation by Mr. Bua, submitted to the court for its approval or modification; or by an alternative arbitration procedure. Either makes sense and represents a rational, fair method of resolving the claims of the respective parties.

Defendants maintain that the Superior Court in Middlesex County had no jurisdiction to hear this case. We doubt that is so. Our long arm jurisdictional rule is coextensive with constitutional due process jurisdictional limits. Were there a need to do so, we

think it likely that New Jersey could be found to have sufficient contacts with this litigation to justify its exercising jurisdiction to hear and resolve the matter. *See Pennoyer v. Neff,* 95 *U.S.* 714, 733, 24 *L.Ed.* 565 (1877); *International Shoe Co. v. Washington,* 326 *U.S.* 310, 316, 66 *S.Ct.* 154, 90 *L.Ed.* 95 (1945); *Lebel v. Everglades Marina, Inc.,* 115 *N.J.* 317, 322, 558 *A.*2d 1252 (1989).

However, assuming New Jersey has the constitutional authority to hear this case, it does not follow that it should do so. The matter is already pending and ripe for resolution in another tribunal and under sound principles of comity, it is most appropriate that this state defer to the federal court in Illinois to complete its handling and resolution of the matter.

 Comity does not rest on a lack of jurisdiction. Rather, it rests on a voluntary recognition of pending judicial proceedings in another forum. "Comity is not a binding obligation on the forum state, but a courtesy voluntarily extended to another state for reasons of 'practice, convenience and expediency.'" *City of Philadelphia v. Austin,* 86 *N.J.* 55, 64, 429 *A.*2d 568 (1981). It is a matter of discretion. *Ibid.*

> Considerations of comity forbid interference with the prosecution of a proceeding in a foreign jurisdiction capable of affording adequate relief and doing complete justice, unless there be a special equity.... The question is not the existence of the power but the propriety of its exercise in the given case. The rule of comity is grounded in the policy of avoiding conflicts of jurisdiction, unless upon strong grounds, and the general principle that the court which first acquires jurisdiction of the issue has precedence.
>
> [*O'Loughlin v. O'Loughlin,* 6 *N.J.* 170, 179, 78 *A.*2d 64 (1951), *cert. denied,* 346 *U.S.* 824, 74 *S.Ct.* 42, 98 *L.Ed.* 350 (1953).]

*See also Schulmeisters v. Schulmeisters,* 281 *N.J.Super.* 216, 220–22, 656 *A.*2d 1312 (Ch.Div.1993), *appeal dismissed,* 281 *N.J.Super.* 1, 656 *A.*2d 436 (App.Div.1994); *Yancoskie v. Delaware River Port Auth.,* 78 *N.J.* 321, 324, 395 *A.*2d 192 (1978).

Application of the comity principle is most appropriate here. Until now, this entire matter has proceeded in Illinois. The court in Illinois has procedures in place to deal with the present dispute. That court can efficiently adjudicate the parties' disputes and can

properly attend to the disbursement of those proceeds. There is no reason why the remaining issues in the case should be transferred to New Jersey and there is every reason why they should remain for final resolution in Illinois.

The order of the Law Division is reversed. Plaintiff's complaint is dismissed so that further necessary proceedings may take place in the United States District Court for the Northern District of Illinois.