251 N.J. Super. 608 (1991)
598 A.2d 1253
KIM MARIE GARDE, AS ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF KIM GARDE, DECEASED, PLAINTIFF-APPELLANT,
v.
RICHARD WASSON, M.D., AND VINCENT GALDI, M.D., P.A., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 21, 1991.
Decided November 21, 1991.
*609 Before Judges PETRELLA, ASHBEY and ARNOLD M. STEIN.
Bryan D. Garruto argued the cause for appellants (Garruto, Galex & Cantor, attorneys; Bryan D. Garruto and Jane B. Cantor, of counsel; Jane B. Cantor, on the brief).
I. Blakeley Johnstone III argued the cause for respondents (Johnstone, Skok, Loughlin & Lane, attorneys; I. Blakely Johnstone, of counsel; I. Blakely Johnstone and Robert A. Kopnicki, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
The issue, projected by the decision in Alfone v. Sarno, 87 N.J. 99, 432 A.2d 857 (1981), is whether plaintiff can give a release as part of the settlement of her medical malpractice claim which is binding on her heirs and assigns insofar as it *610 expressly grants a release from any potential wrongful death action claims.
On June 8, 1983, Kim Garde filed a medical malpractice action against defendants, Doctors Wasson and Galdi, alleging medical malpractice in the failure to diagnose cervical cancer on or about December 16, 1980. On June 26, 1985, Garde executed a release of Dr. Wasson in consideration of $250,000. In the release she relinquished any and all claims and rights which she had against Dr. Wasson. Paragraph one provided:
1. Release. I release and give up any and all claims and rights which I may have against you. This releases all claims, including those of which I am not aware and those not mentioned in this Release. This Release applies to claims resulting from anything which has happened up to now. I specifically release the claims made for any and all personal injuries and other damages, including punitive damages, allegedly arising from medical treatment rendered at St. Peter's Medical Center commencing on or about December 16, 1980 which was the subject of a lawsuit in the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-36436-83 and any and all claims for personal injuries and other damages, including punitive damages, alleged in the future as the result of the medical treatment rendered during the hospitalization at St. Peter's Medical Center commencing on or about December 16, 1980.
In addition, by signing this Release, I specifically release and give up any and all rights to and claims of pecuniary loss, injury or damage as those terms are defined in the New Jersey Wrongful Death Act, N.J.S.A. 2A:31-1, et seq., and as interpreted by the Courts of New Jersey, which might accrue to me and others by virtue of the death of Kim Garde whether such claims are pursued directly by Kim Garde or indirectly or by some person or persons in a representative capacity, if such claims arise in any way from or are in any way connected or related to the medical treatment rendered at St. Peters Medical Center commencing on or about December 16, 1980. It is expressly understood and agreed by me that a substantial reason and consideration of you in settling the previously mentioned lawsuit and agreeing to pay and paying the money set forth in this Release is the settlement, release and elimination at this time of any and all claims that I or others have now or in the future might have, absent this Release, for the wrongful death of Kim Garde. I further understand and agree that under the present state of the law in New Jersey that absent this Release and regardless of the entry of any judgment in this litigation, my heirs or others might have claims for the wrongful death of Kim Garde against you; see Alfone v. Sarno, 87 N.J. 99 [432 A.2d 857] (1981); and I further understand and agree that by executing this Release and accepting the money paid by you, I acknowledge that I have received fair, just and adequate consideration for any claims for the wrongful death of Kim Garde, and I further understand and agree that by executing this Release and accepting the money paid by you I have forever remised, released, discharged and given up any and all claims that *611 I or others might have against you for the wrongful death of Kim Garde arising from or alleged to arise from or in any manner related to the medical treatment rendered at St. Peter's Medical Center on or about December 16, 1980. I further understand and agree that if any claims are made at any time in the future by me directly or indirectly or by or on behalf of my heirs or others directly or by some person in a representative capacity, for pecuniary losses, injury or damages arising from the wrongful death of Kim Garde against you, that you shall be entitled to be indemnified by the Estate of Kim Garde and/or her heirs, executors, administrators or personal representatives for any sums expended in defending against said claims including, but not limited to, attorneys' fees and all costs of suit together with any sum paid by way of judgment, settlement or otherwise on account of these claims.
* * * * * * * *
By this release, plaintiff specifically intended to bind her heirs. Paragraph four thereof stated:

Who is Bound. I am bound by this Release. Anyone who succeeds to my rights and responsibilities, such as my heirs or the administrator or executor of my estates, is also bound. I specifically understand that all of the terms and conditions of the Release are for the benefit of and binding on me, my heirs, the administrator or executor of our estates and anyone else who succeeds to my rights and responsibilities.
At the time Garde signed the release she had three children. She was represented in the medical malpractice action, its settlement and the execution of the release by the law firm of Garruto, Galex & Cantor.
Kim Garde died on January 22, 1989. Thereafter, the complaint in this action was filed on August 24, 1990, by Kim Marie Garde, the oldest of the decedent's three children (then age 19), as administratrix ad prosequendum on behalf of the estate of her mother. Her two brothers were then approximately ages 18 and 11. The wrongful death action complaint was prepared and filed by the same law firm that had represented decedent in connection with the settlement of the prior action against the same defendants. Defendants' answer raised the settlement agreement and release of June 26, 1980, as its first separate defense. Shortly after filing of the answer, defendants moved for summary judgment based upon the October 7, 1990 release.
We are concerned by the fact that the same law firm which instituted the wrongful death action not only represented *612 and participated in the settlement of the prior court action but also represented the decedent in connection with the execution of the release. It appears entirely inappropriate for the same firm to be now representing the representative capacity plaintiff in this case. At oral argument plaintiff's attorneys expressed willingness to withdraw from further representation in the event this matter was remanded to the trial court. We are nonetheless concerned that even in prosecuting this appeal there is an appearance of unprofessionalism when the same law firm in effect chooses to attack as a nullity a release it negotiated with the same defendants in the tort action on behalf of Kim Garde before her death, and did not make known to the attorney representing those defendants that it considered the release totally ineffective. This is not to say that we conclude that there has been a violation of any express disciplinary rule or rule of professional conduct.
Plaintiff appeals from the dismissal of the complaint. She argues that the wrongful death claims could not be released by the decedent without specific court approval. In addition, she argues that parental acts which defeat the rights of minor children are void where there is no independent representation of the children. Although the record does not contain the information, we were told at oral argument that at the time decedent signed the release, to all outward appearances, she was functioning normally and was not thinking of death. Apparently, the recurrence of cancer occurred or was discovered thereafter.
Defendants argue that the settlement that was negotiated included the release of the wrongful death claim and that a greater amount was paid than would have been paid in settlement only because of the release of any wrongful death claim. Defendants argue that the nature of cancer, toxic tort claims, asbestos claims and the like, make it exceedingly difficult to determine, in the time frame of only a few years, whether there will be any adverse effect. Hence, it is argued that there *613 should be no impediment to settling a claim which includes any potential wrongful death action as long as the settlement is voluntary and the parties are competent to settle. We add that in this case there is nothing to indicate that either the settlement was not voluntary or the decedent was not competent to enter into the settlement agreement, including that aspect which related to any potential future wrongful death action.
At oral argument, plaintiff's attorney, in response to questions by the court, acknowledged that his position was that public policy precludes or should preclude the release of a wrongful death claim, unless all potential claimants under the wrongful death action were either represented personally or by guardians, and there was specific court approval of the release. His argument included not only this action, but any tort action. The obvious implications extend beyond the present case not only to asbestos cases, toxic tort cases, and the like, but also to gravely injured plaintiffs and may affect the ability to currently settle such cases during the lifetime of plaintiffs who have or will institute suits for tort damages.
The motion judge concluded that the parties to the release intended "to achieve a release of not only Kim Garde's personal injury claim throughout her lifetime but also a release of any action that could be brought as a result of her death under the New Jersey Wrongful Death Act." It is undisputed that the intent of the subject release was clearly and expressly to relinquish all claims, including the wrongful death action. Paragraph one of the release makes that abundantly clear, and paragraph four expresses a clear intent to bind her heirs and any one asserting through her.
The Wrongful Death Act provides:
When the death of a person is caused by a wrongful act, neglect or default, such as would, if death had not ensued, have entitled the person injured to maintain an action for damages resulting from the injury, the person who would have been liable in damages for the injury if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances amounting in law to a crime. [N.J.S.A. 2A:31-1].
*614 The history of the Wrongful Death Act was discussed by the majority in Alfone v. Sarno, supra, 87 N.J. at 104, 432 A.2d 857, and by the dissent (id. at 126-128, 432 A.2d 857) and need not be repeated here. Alfone appears to reject the notion that a wrongful death action is wholly derivative from decedent's right to sue for personal injuries. The statute does talk in terms of an action for damages which could have been brought "if death had not ensued" to the injured person. The Alfone Court pointed out that its decision in Lawler v. Cloverleaf Memorial Park, Inc., 56 N.J. 326, 266 A.2d 569 (1970), followed the minority view that the wrongful death statute refers to the wrongful nature of the fatal injury, not the lapse of time between the injury and the commencement of suit. Id. 87 N.J. at 106, 432 A.2d 857. Lawler actually involved the issue of relation back as avoiding the bar of the statute of limitations.
Alfone addressed the procedures to be followed in the settlement of a personal injury claim and recognized that a settlement agreement would be binding on the parties to the wrongful death action. The Court stated in Alfone:
The same procedures [determining elements of double recovery where there had been a trial in a tort action] must be followed where the personal injury claim did not proceed to judgment but was settled or released. Because a trial transcript will not be available, the trial judge must examine the settlement agreement or release itself. We anticipate that settlement agreements in the future will clearly indicate what elements of damages the injured person is recovering and from what elements defendant has been released. A valid written settlement agreement specifically reciting what losses were compensated will be binding on the wrongful death parties on the issue of what damages can be claimed subsequently. General recitals in a settlement agreement will be given such weight as the circumstances suggest they should be given; they will not be conclusive and will be binding on the parties only to the extent they reflect losses actually compensated pursuant to the agreement and discoverable claims actually relinquished in consideration of the settlement. [87 N.J. at 122, 432 A.2d 857]. (Footnotes omitted).
The Court in Alfone went on to say:
We recognize that our decision today may prevent insurance carriers from obtaining complete releases from all possible wrongful death claims, except perhaps by the inclusion in any such agreement of all persons who subsequently are determined to be wrongful death beneficiaries under N.J.S.A. 2A:31-4. The policy favoring settlement and finality of claims, ..., cannot defeat *615 statutory rights created for the protection of survivors of one wrongfully killed. In any event, insurance carriers will be able to obtain releases from a substantial part of the potential liability. Thus we see no insurmountable conflict between the policy favoring settlement and our decision today.
As a final note it might be prudent to add that we are well aware that the rules and procedures we have established today are not the final answer to the difficulties presented by these issues. It is our belief that these rules and procedures will be improved and refined in subsequent cases as our courts gain experience. In the same way, insurance carriers and lawyers will develop methods through experimentation for protecting the several interest at stake here. Our task has been to lay the foundation for such future development and refinement. [87 N.J. at 123, 432 A.2d 857]. (Citations omitted).
Alfone concerns a decedent's release of the prior personal injury claim, and the effect which that release has on the later wrongful death action. However, Alfone does not address a decedent's attempted release of the wrongful death claim itself. Thus, it can be asked whether public policy should be held to preclude release of wrongful death claims, unless all those who may benefit by the wrongful death statute are represented and the agreement is approved by the court, or whether the language in Alfone contains sufficient flexibility to allow for such releases when that is the clear intent of the parties.
Our review of other authorities has not provided a conclusive answer. It appears that Florida holds that a decedent's release bars a subsequent wrongful death action. Warren v. Cohen, 363 So.2d 129, 131 (Fla. Dist. Ct. App. 1978), cert. den. 373 So.2d 462 (Fla. 1979). A Florida judgment would have the same effect. See Variety Children's Hospital v. Perkins, 445 So.2d 1010, 1011 (Fla. 1983). See also dissenting opinion in Alfone v. Sarno, supra, 87 N.J. at 127-128, 432 A.2d 857; Petersen v. Kemper, 70 S.D. 427, 18 N.W.2d 294, 296 (1945). One treatise states that ordinarily the beneficiaries do not have to consent if the person in whom the wrongful death action is vested wishes to settle it. 22 Am.Jur.2d Wrongful Death § 188 (1988); but see In re Estate of Milliman, 101 Ariz. 54, 415 P.2d 877, 886 (1966). Court approval of a settlement is necessary in some jurisdictions in wrongful death actions where minor children have a beneficial interest. See Abel v. Tisdale, 619 P.2d 608, *616 610 (Okla. 1980), rev'd on other grounds 673 P.2d 836 (Okla. 1983) (settlement of wrongful death action); Matter of Estate of White, 41 Or. App. 439, 599 P.2d 1147, 1150 (1979), aff'd 609 P.2d 365 (Or. 1980) (settlement of wrongful death action). See also Colfer v. Royal Globe Ins. Co., 214 N.J. Super. 374, 377-378, 519 A.2d 893 (App.Div. 1986) (settlement of child's UMI claim requires court approval); R. 4:44-1; R. 4:44-3. The only case we have found which has held that the release of a wrongful death claim before the death of an injured person is void on public policy grounds is Schiffman v. Service Truck Lines, Inc., 308 So.2d 824, 826 (La. 1974).
The focus must be on the language in Alfone which discusses the potential for complete releases for wrongful death claims "perhaps by the inclusion in any such agreement of all persons who subsequently are determined to be wrongful death beneficiaries...." In our view, the phrase "inclusion in any such agreement" means that it clearly appears in the release that these persons are intended to be bound and are specifically referred to therein, as was done in paragraph four of the release under consideration here. We do not read Alfone to foreclose or prevent a plaintiff, while alive, from settling a tort claim and at the same time releasing a wrongful death claim.
The settlement entered into in this tort action foreclosed further litigation, including a wrongful death action. The parties in the tort action were free to expressly include a release of any potential wrongful death action. In our view, a contrary position would fly in the face of our longstanding policy favoring settlement and finality of claims. See Alfone v. Sarno, supra, 87 N.J. at 123, 432 A.2d 857; Judson v. Peoples Bank and Trust Co., 25 N.J. 17, 35, 134 A.2d 761 (1957); DeCaro v. DeCaro, 13 N.J. 36, 44, 97 A.2d 658 (1953).
Affirmed.