**ASCH WEBHOSTING, INC., d/b/a 1104net.com, Appellant**

v.

**ADELPHIA BUSINESS SOLUTIONS INVESTMENT, LLC, d/b/a Telcove.**

No. 09–2296.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 15, 2010.

Opinion Filed: Jan. 25, 2010.

Peter W. Till, Esq., Law Office of Peter W. Till, Springfield, NJ, for Appellant.

Gail L. Gottehrer, Esq., Thomas G. Rohback, Esq., Axinn, Veltrop & Harkrider, Hartford, CT, for Adelphia Business Solutions Investment, LLC, d/b/a Telcove.

BEFORE: AMBRO, CHAGARES and STAPLETON, Circuit Judges.

*OPINION OF THE COURT*

STAPLETON, Circuit Judge:

Appellant Asch Webhosting, Inc. ("Asch"), filed this civil action against Adelphia Business Solutions Investment LLC, doing business as Telcove ("Telcove"), alleging breach of contract, breach of the covenant of good faith and fair dealing, and intentional interference with contractual relations. Asch appeals the order of the District Court granting summary judgment in favor of Telcove.

Because we write only for the benefit of the parties, we assume familiarity with the facts of this civil action and the proceedings in the District Court. We will affirm essentially for the reasons stated by the District Court.

## I.

Telcove is an internet service provider ("ISP"), which purchases capacity from "upstream" providers of internet services and sells that capacity to smaller ISPs "downstream," like Asch. Telcove and Asch entered into a three-year agreement ("Agreement") under which Telcove agreed to provide internet services to Asch. Shortly after activating Asch's internet service in February 2004, Telcove began receiving complaints about emails sent from internet protocol ("IP") addresses associated with Asch. Telcove eventually received nearly fifteen hundred complaints about emails sent from these IP addresses. In addition, one of Telcove's upstream providers notified Telcove that it risked losing its internet service because of the content of an email sent from an IP address associated with Asch. On April 28, 2004, Telcove informed Asch by letter that it was terminating its internet service on April 30, 2004. The letter notified Asch that the Agreement was being terminated in accordance with sections (b) and (g) of the Acceptable Use Policy set forth in the Agreement. However, after a discussion between counsel, Telcove agreed to continue providing internet service to Asch so that it would have time to procure internet services from another provider. On June 10, 2004, Telcove stopped providing internet service to Asch.

Asch did not reach agreement with another internet provider and ceased operations. Asch then initiated this civil action against Telcove. Telcove moved for summary judgment on these claims, arguing that an exculpatory clause in the Agreement prevented Asch from recovering the damages it sought. The District Court granted summary judgment in favor of

Telcove and subsequently denied Asch's motion for reconsideration. Asch filed a timely appeal.

## II.

The District Court granted summary judgment in favor of Telcove, concluding that Asch's claim for damages was precluded by the exculpatory clause included in the Agreement between the parties and that the exculpatory clause was enforceable. Under New Jersey law, exculpatory clauses in private contracts are "generally sustained so long as they do not adversely affect the public interest." *Chem. Bank of N.J. Nat'l Ass'n v. Bailey,* 296 N.J.Super. 515, 687 A.2d 316, 322 (N.J.Super.1997).[1] They are ordinarily upheld in the commercial context because "[t]he judiciary will not undertake the writing of a different or better contract between the parties." *See id.* (quoting *Swisscraft Novelty Co. v. Alad Realty Corp.,* 113 N.J.Super. 416, 274 A.2d 59, 62 (N.J.Super.1971)). Thus, an exculpatory clause will be enforced if "1) it does not adversely affect the public interest; 2) the exculpated party is not under a legal duty to perform; 3) it does not involve a public utility or common carrier; or 4) the contract does not grow out of unequal bargaining power or is otherwise unconscionable." *Gershon v. Regency Diving Ctr., Inc.,* 368 N.J.Super. 237, 845 A.2d 720, 727 (N.J.Super.2004). Asch argues that the first and fourth exceptions apply to the exculpatory clause at issue here.

The exculpatory clause at issue states as follows:

### Warranties/Disclaimers

TELCOVE'S INTERNET SERVICE IS PROVIDED ON AN "AS IS, AS AVAILABLE" BASIS UNLESS STATED OTHERWISE IN THE TELCOVE'S SERVICE LEVEL AGREEMENT (SLA). NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THOSE OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE MADE WITH RESPECT TO TELCOVE'S INTERNET SERVICES(S) OR ANY INFORMATION OR SOFTWARE THEREIN. CUSTOMER RELEASES TELCOVE FROM ALL LIABILITY OR RESPONSIBILITY FOR ANY DIRECT, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO DAMAGES DUE TO LOSS OF REVENUES OR LOSS OF BUSINESS, SUFFERED BY CUSTOMER IN CONNECTION WITH THEIR USE OF OR INABILITY TO USE THE TELCOVE INTERNET SERVICES. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, TELCOVE DISCLAIMS TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW ANY RESPONSIBILITY FOR (AND UNDER NO CIRCUMSTANCES SHALL BE LIABLE FOR) ANY CONDUCT, CONTENT, GOODS AND SERVICES AVAILABLE ON OR THROUGH THE INTERNET OR TELCOVE SERVICES. IN NO EVENT SHALL TELCOVE'S AGGREGATE LIABILITY EXCEED THE AMOUNT PAID BY CUSTOMER TO TELCOVE FOR THE TELCOVE SERVICES. USE OF ANY INFORMATION OBTAINED VIA TELCOVE'S INTERNET SERVICE IS AT THE CUSTOMER'S OWN RISK. TELCOVE SPECIFICALLY DISCLAIMS ANY RESPONSIBILITY FOR THE ACCURACY OR QUALITY OF THE IN-

---

1. The parties agree that New Jersey law applies to the Agreement.

FORMATION OBTAINED THROUGH ITS SERVICES.

[PA 56] (emphasis in original).

In this litigation, Asch argued that Telcove's termination of the Agreement destroyed its business. Accordingly, as damages, it sought the fair market value of its business, allegedly $1.43 million, in consequential damages. If the exculpatory clause is enforceable, by its terms it relieves Telcove of any liability for the damages Asch seeks because Asch agreed to release Telcove from "*all* liability or responsibility for any direct, indirect, incidental or consequential damages .... suffered by [Asch] in connection with [its] use of or inability to use the Telcove internet services." *Id.* (emphasis added). Thus, the District Court correctly concluded that the exculpatory clause, if enforceable, barred Asch from recovering the damages it sought in this action.[2]

The District Court also determined that the exculpatory clause was enforceable under New Jersey law because enforcement of the clause was neither adverse to the public interest nor unconscionable. We agree with both of these conclusions.

■ On appeal, Asch argues that the District Court erred by concluding that enforcing the clause would not adversely affect the public interest. Asch contends that a willful and predatory breach of contract would be contrary to the public interest. *Cf. Lucier v. Williams,* 366 N.J.Super. 485, 841 A.2d 907, 913–16 (N.J.Super.2004) (holding that a limitation of liability clause in a home inspection contract essentially operated as an exculpatory clause and could not be enforced because it contravened New Jersey public policy). Assuming that enforcing an ex-

culpatory clause in the case of such a breach would affect the public interest, Asch has not established that Telcove's actions were "predatory." Telcove produced evidence demonstrating that it had received numerous complaints about activity related to Asch's IP addresses and decided to terminate Asch's internet service on that basis. Importantly, Asch has not presented evidence suggesting that Telcove had a reason, other than the explanations it gave, for terminating its services to a paying client. Although Asch points to a series of emails sent among Telcove employees regarding Asch's request for additional IP addresses, these emails do not demonstrate that Telcove acted predatorily by terminating the Agreement. Furthermore, assuming that Telcove breached the Agreement, enforcing an exculpatory clause after a willful breach of contract does not necessarily violate public policy. *See Printing Mart–Morristown v. Sharp Elecs. Corp.,* 116 N.J. 739, 563 A.2d 31, 38 (1989) ("Where a person interferes with the performance of his or her own contract, the liability is governed by principles of contract law.... Contract law serves contractual parties' economic interest, such as enabling them efficiently [to] breach the contract, free from the threat of punitive damages." (internal citations and quotations omitted)); *Saxon Constr. & Mgmt. Corp. v. Masterclean of N.C., Inc.,* 273 N.J.Super. 231, 641 A.2d 1056, 1059 (N.J.Super.1994) (discussing factors to consider when determining if enforcing a contractual term violates public policy). Because the public interest would not be adversely affected by the enforcement of this clause, the District Court properly enforced it.

■ Next, Asch contends that the District Court erred by concluding that the

2. Asch does not dispute the District Court's interpretation of the exculpatory clause, argu-

ing only that the clause was unenforceable.

exculpatory clause in the Agreement was not unconscionable. "In determining whether a contract is unconscionable, courts focus on the bargaining power of the parties, the conspicuousness of the putative unfair term, and the oppressiveness and unreasonableness of the term." *Carter v. Exxon Co. USA*, 177 F.3d 197, 207 (3d Cir.1999). Here, the District Court found there was no evidence of unequal bargaining power between the parties because Asch was a commercial entity that had previously entered into internet service agreements with several other service providers and was managed by an experienced businessman who had graduated from law school. In addition, the Court noted that the term was prominently presented in the parties' agreement and was not unreasonable or oppressive.

We agree with the District Court's conclusions about the bargaining power of the parties and the conspicuousness of the exculpatory clause. *See id.* Moreover, we agree that the clause is not unconscionable as applied to the facts of this civil action. *See id.* ("It is only when the circumstances of the transaction, including the sellers' breach, cause the consequential damage exclusion to be inconsistent with the intent and reasonable commercial expectations of the parties that invalidation of the exclusionary clause would be appropriate ...." (quoting *Kearney & Trecker Corp. v. Master Engraving Co.*, 107 N.J. 584, 527 A.2d 429, 437–38 (1987))). Here, Telcove provided Asch with notice of its intent to terminate the Agreement and continued providing internet service to Asch while it negotiated service agreements with other internet providers. One provider offered a monthly fee that was within $200 of Telcove's monthly fee, but Asch declined that offer and ceased operations. Thus, Telcove gave Asch notice and the opportunity to find another provider before terminating its service to Asch. Enforcing the exculpatory clause under these circumstances is not oppressive or unreasonable, and, therefore, the clause is not unconscionable.

Finally, Asch claims that the District Court erred by granting the motion for summary judgment by relying on Telcove's assertion that it received 1500 complaints related to Asch's IP addresses. Asch argues that the great majority of these complaints were anonymous and were not verified by Telcove. However, the District Court did not make a finding that the complaints Telcove received were accurate or that Asch was involved in "spamming" or sending emails with pornographic content. Instead, the Court found that Telcove relied on the complaints in good faith and that Asch did not demonstrate any bad faith of the part of Telcove. Accordingly, the Court did not err by considering this evidence when granting summary judgment.

## III.

The judgment of the District Court will be affirmed.