J. E02008/16

2016 PA Super 248

MICHELE VALENTINO,                          :       IN THE SUPERIOR COURT OF
AS ADMINISTRATRIX OF THE ESTATE    :               PENNSYLVANIA
OF DEREK VALENTINO, DECEASED,       :
AND MICHELE VALENTINO,                   :
IN HER OWN RIGHT,                            :
                                                        :
                            Appellant            :
                                                        :
                    v.                                 :       No. 3049 EDA 2013
                                                        :
PHILADELPHIA TRIATHLON, LLC          :


Appeal from the Order Entered September 30, 2013,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. April Term, 2012 No. 1417


BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES,
             PANELLA, SHOGAN, LAZARUS, OLSON, AND OTT, JJ.

CONCURRING AND DISSENTING OPINION BY FORD ELLIOTT, P.J.E.:
**FILED NOVEMBER 15, 2016**

      Because I conclude that Derek Valentino's release agreement did not

bind appellant and did not preclude her from bringing a wrongful death

action, I must respectfully dissent from that part of the Majority's Opinion.  I

join the Opinion in all other respects.

      While the Majority attempts to distinguish ***Buttermore v. Aliquippa***

***Hospital***, 561 A.2d 733 (Pa. 1989), and ***Brown v. Moore***, 247 F.2d 711

(3rd Cir. 1957), ***cert. denied***, 355 U.S. 882 (1957), I find those cases to be

instructive.   In ***Buttermore***, James Buttermore was involved in an

automobile accident, sustaining injuries.  ***Buttermore***, 561 A.2d at 734.  He

signed a release in settlement of his claim against the tortfeasor for the sum of $25,000, agreeing to release from liability any and all persons, known or unknown. *Id.* Subsequently, Buttermore and his wife instituted suit against Aliquippa Hospital and the treating physicians alleging that the treatment he received aggravated the injuries he sustained in the accident, worsening his condition. *Id.* at 734-735. The defendants moved for summary judgment on the basis of Buttermore's release. *Id.* at 735.

After first holding that the release applied to all tortfeasors, including the defendants, whether specifically named or not, the court in *Buttermore* turned to the matter of Buttermore's wife's loss of consortium claim: "That is not to say, however, that parties may bargain away the rights of others not a party to their agreement. That question rises here because a spouse not a party to the agreement seeks to sue in her own right for loss of consortium." *Id.* at 735. The *Buttermore* court held that the wife had an independent cause of action for loss of consortium regardless of her husband's release and settlement agreement: "The question is, does the wife, not a signatory to the agreement, have an independent right to sue for the injury done her. We answer that she does." *Id.* at 736. *See also Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 658 (Pa.Super. 2013), *appeal denied*, 86 A.3d 233 (Pa. 2014), *cert. denied*, 134 S.Ct. 2890, ___ U.S. ___ (2014), citing *Pennsylvania Railroad Co. v. Henderson*, 51 Pa. 315, 317 (1866) ("This suit is brought by the widow, and her right of action

cannot be affected by any discharge or release of [husband] in his lifetime.").

Similarly, in **Brown v. Moore**, the plaintiff, the widow and executrix of George Brown, brought a cause of action under the Wrongful Death Act for the benefit of herself and her three minor children, as well as a Survival Act claim. **Id.** at 714. Brown, a neurotic, was admitted to a sanitarium for treatment including electrical shock therapy, following which he fell down a flight of stairs. **Id.** at 715. After the fall, Brown was picked up by his extremities, with his head hanging down, resulting in paralysis. **Id.** Brown had signed a release agreeing to release the sanitarium and its employees from liability for any injury resulting from his treatment as a neurotic while at the sanitarium, including electro-shock therapy or treatment of a similar nature. **Id.** at 722. After concluding that Brown's treatment following his fall down the stairs was unrelated to his treatment as a neurotic by electro-shock therapy or other similar therapeutic means, the **Brown** court stated,

> [S]ince this case may well come before the reviewing Court we point out that **even if the release were deemed sufficient to relieve the defendants of liability under the Pennsylvania Survival Act is [sic] could scarcely relieve them of liability under the Pennsylvania Wrongful Death Act for that Act provides benefits not only for the widow of a deceased person but also for his children.** Even assuming that the release was effective as to the plaintiff, who executed it as did Brown, nonetheless Brown's children would be entitled to a recovery.

*Id.* (emphasis added).[1]

Relying on California law, including **Madison v. Superior Court**, 203 Cal.App.3d 589 (Cal.App. 2 Dist. 1988), the Majority concludes that even if appellant can bring the wrongful death action, appellee had no duty to the decedent because of his complete waiver. According to the Majority, the decedent agreed to waive liability and assume all risks inherent to the dangerous activity of sprint triathlon; therefore, appellee owed the decedent no duty to protect him from injury. Therefore, even assuming appellant can sue for wrongful death, she cannot possibly recover where appellee has a complete defense based on the decedent's assumption of the risk.

I view the **Madison** line of cases as creating a distinction without a difference, *i.e.*, a wrongful death claimant can bring suit but will inevitably

---

[1] **Brown** was disapproved of by **Grbac v. Reading Fair Co.**, 688 F.2d 215 (3rd Cir. 1982). However, **Grbac** was criticized by this court in **Pisano**:

> In **Grbac**, the court of appeals held that a liability release executed by decedent was binding on the widow's wrongful death claim. **Id.** at 217-218. Erroneously following the Pennsylvania Supreme Court's holding in [**Hill v. Pennsylvania Railroad Company**, 35 A. 997 (Pa. 1896)], the court of appeals misinterpreted Pennsylvania law in holding that a "wrongful death action is purely derivative" in Pennsylvania. **Id.** at 217. The **Grbac** Court cites no further cases in support of its holding, and no binding Pennsylvania authority exists with a similar holding. In fact, the limited authority on this subject indicates the opposite conclusion of **Grbac**.

**Pisano**, 77 A.3d at 658.

lose on summary judgment because of the decedent's waiver of liability, to which the wrongful death claimant was not a party. Such a holding would effectively eviscerate the Pennsylvania wrongful death statute which creates an independent and distinct cause of action, not derivative of the decedent's rights at time of death.[2] I believe the better approach is outlined by the New Jersey Superior Court in *Gershon v. Regency Diving Center, Inc.*, 845 A.2d 720 (N.J.Super. 2004), which explicitly rejected *Madison* and its progeny, aptly describing *Madison*'s holding as "paradoxical" and "internally inconsistent." *Id.* at 725.[3]

In *Gershon*, the decedent was a scuba diver and signed up for advanced diving training. *Id.* at 723. As a condition of his participation, he executed a release agreement. *Id.* The decedent expressly waived liability, including for wrongful death, and assumed all risk. *Id.* The lower court held that while the exculpatory release signed by the decedent barred any survivorship claim which could have been asserted by his estate, it did not preclude an independent wrongful death action where the decedent's heirs

---

[2] The *Pisano* court explained that a wrongful death action is "derivative" of the original tort in the same way that a loss of consortium claim is derivative, in that both arise from an injury to another person. *Pisano*, 77 A.3d at 659. However, unlike, *e.g.*, a stockholder's derivative lawsuit or a subrogation action, loss of consortium and wrongful death claims are separate and distinct causes of action. *Id.* at 660.

[3] "Although we acknowledge that the pronouncements of sister states are not binding authority on our courts, such decisions may be considered as persuasive authority." *Shedden v. Anadarko E&P Co., L.P.*, 88 A.3d 228, 233 n.3 (Pa.Super. 2014), *affirmed*, 136 A.3d 485 (Pa. 2016).

had not signed the agreement. *Id.* at 724. Relying on **Madison**, **supra**, the defendant, Regency Diving Center, argued that the release operated as a complete bar to all claims. *Id.*

On appeal, the Superior Court of New Jersey, Appellate Division, affirmed, holding that the decedent did not have the legal authority to bargain away his heirs' statutory right to bring a wrongful death action:

> The release agreement here was signed by decedent and defendants. It can therefore only bind these parties. On its face the release only manifests decedent's intention to waive defendants' duty of care pertaining to his personal safety. In order for such a waiver to also apply to decedent's heirs, the agreement must manifest the unequivocal intention of such heirs to be so bound. The public policy underpinning the Wrongful Death Act requires that we narrowly construe any attempt to contractually limit or, as in this case, outright preclude recovery. Decedent's unilateral decision to contractually waive his right of recovery does not preclude his heirs, who were not parties to the agreement and received no benefit in exchange for such a waiver, from instituting and prosecuting a wrongful death action.

*Id.* at 727.

The **Gershon** court also rejected the **Madison** line of cases as against the public interest[4] intended to be protected by the Wrongful Death Act:

> [T]he intended beneficiaries of the Act are deprived of their statutorily authorized remedy merely to provide defendants with an environment from which to operate their business, apparently free from the risk of litigation. Such a prospect would directly

---

[4] As in New Jersey, in Pennsylvania, exculpatory agreements are not favored by the law and must not contravene public policy. *Id.* at 726-727; **Tayar v. Camelback Ski Corp., Inc.**, 47 A.3d 1190 (Pa. 2012).

> undermine the remedial purpose of the Act. Stated differently, even if decedent had the legal authority to bargain away the statutory right of his potential heirs, society's interest in assuring that a decedent's dependents may seek economic compensation in a wrongful death action outweighs decedent's freedom to contract.

*Id.* at 728.[5]

The Majority contends that allowing third-party claims including wrongful death where the decedent expressly assumed the risk of injury would expose insurers to increased liability, and that it is impractical to expect defendants to obtain releases from all potential plaintiffs. The court in **Gershon** addressed those concerns as follows:

> We recognize that our decision today may prevent insurance carriers from obtaining complete releases from all possible wrongful death claims, except perhaps by the inclusion in any such agreement of all persons who subsequently are determined to be

---

[5] As in New Jersey, in Pennsylvania, the purpose of the wrongful death statute is to create a right of recovery for economic loss caused by the death of a family member, including children who were dependent upon the decedent for economic support. **See Pisano**, 77 A.3d at 658-659 ("In contrast [to a survival action], wrongful death is not the deceased's cause of action. An action for wrongful death may be brought only by specified relatives of the decedent to recover damages in their own behalf, and not as beneficiaries of the estate. . . . This action is designed only to deal with the economic effect of the decedent's death upon the specified family members.") (citations omitted); **see also Amato v. Bell & Gossett**, 116 A.3d 607, 625 (Pa.Super. 2015), **appeal granted in part on other grounds**, 130 A.3d 1283 (Pa. 2016) ("The purpose of the Wrongful Death Statute . . . is to compensate the decedent's survivors for the pecuniary losses they have sustained as a result of the decedent's death. This includes the value of the services the victim would have rendered to his family if he had lived. A wrongful death action does not compensate the decedent; it compensates the survivors for damages which they have sustained as a result of the decedent's death." (citations omitted)).

> wrongful death beneficiaries under N.J.S.A. 2A:31-4. The policy favoring settlement and finality of claims, cannot defeat statutory rights created for the protection of survivors of one wrongfully killed.

*Id.* at 728-729, quoting ***Alfone v. Sarno***, 432 A.2d 857 (N.J. 1981) (citations omitted).[6]

Following **Pisano**, I conclude that Derek Valentino's release agreement did not bind appellant and did not preclude her from bringing a wrongful death action. **Pisano** is clear that a wrongful death action is an independent cause of action, created by statute, and is not derivative of the decedent's rights at time of death. Furthermore, I reject the Majority's position that the decedent's waiver of liability and assumption of the risk can be used as a complete defense to appellant's claims. The release agreement was only between the decedent and appellee and has no effect on the decedent's non-signatory heirs including appellant.

For these reasons, I would remand the matter for further proceedings, including for the trial court to consider the issue of Mr. Mico's expert report. As such, I am compelled to respectfully dissent.

Panella and Lazarus, JJ. join this Concurring and Dissenting Opinion.

---

[6] Presumably, there are still triathlons, road races, and similar events held in the State of New Jersey, despite the decision in **Gershon**. A wrongful death claimant would still have to prove negligence. I would also note that these liability waivers are contracts of adhesion, and a participant cannot compete without executing the waiver and agreeing to assume all risk.