NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1062-12T3

JAMES F. WALTERS,

    Plaintiff-Appellant,

v.

YMCA,

    Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

August 18, 2014

APPELLATE DIVISION

Argued January 29, 2014 — Decided August 18, 2014

Before Judges Fuentes, Fasciale and Haas.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2830-12.

John J. Pisano argued the cause for appellant.

William T. Hilliard argued the cause for respondent (Sweet Pasquarelli, attorneys; Josephine M. DiCosmo, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Plaintiff James F. Walters appeals from the order of the Law Division dismissing his personal injury cause of action against defendant YMCA.  Applying the Supreme Court's holding in Stelluti v. Casapenn Enters., Inc., 203 N.J. 286 (2010), the

trial court granted defendant's motion for summary judgment based on an exculpatory clause in the membership agreement signed by plaintiff as a condition of accessing defendant's facilities and using its physical exercise equipment.

Plaintiff argues the trial court erred in construing the exculpatory clause as a bar to his cause of action because his accident was caused by a negligently maintained stair tread. According to plaintiff, the basis of his cause of action is predicated on the ordinary common law duty of care owed by all business operators to its invitees, and thus it is completely unrelated to the inherent risky nature of the activities offered by health clubs.

Defendant argues the "hold harmless" provision in the membership agreement plaintiff voluntarily signed is a reasonable condition commonly imposed on all those who wish to engage in sports and related physical activities. According to defendant, the accident and resulting injuries are entirely foreseeable consequences given the nature of the activities and facilities offered, including a swimming pool. Defendant argues the trial court correctly concluded that the accident fell well within the scope of the exculpatory clause.

The motion judge concluded the Supreme Court's holding in Stelluti was dispositive of the legal issues raised in this

case. The judge found plaintiff was contractually barred from seeking compensatory damages against defendant based on a claim of ordinary negligence. The judge rejected plaintiff's argument seeking to limit the scope of the Court's holding in Stelluti to apply only to claims based on engaging in the kind of risky activities offered by health clubs. Although plaintiff was not engaged in any physical exercise when he slipped and fell on the steps that led to the indoor pool, the judge found the pool area was "just another type of equipment that is being offered by the health club."

I

We disagree with the motion judge and reverse. A close reading of Justice LaVecchia's analysis in Stelluti reveals that the Court's holding was grounded on the recognition that health clubs, like defendant, are engaged in a business that offers its members the use of physical fitness equipment and a place to engage in strenuous physical activities that involve an inherent risk of injury. The Court upheld the defendant's limited exculpatory clause in Stelluti because the injury sustained was foreseeable as an inherent aspect of the nature of the business activity of health clubs.

As Justice LaVecchia clearly explained on behalf of a majority of the Court:

In sum, the standard we apply here places in fair and proper balance the respective public-policy interests in permitting parties to freely contract in this context (i.e. private fitness center memberships) and requires private gyms and fitness centers to adhere to a standard of conduct in respect of their business. Specifically, we hold such business owners to a standard of care congruent with the nature of their business, which is to make available the specialized equipment and facility to their invitees who are there to exercise, train, and to push their physical limits. That is, we impose a duty not to engage in reckless or gross negligence. We glean such prohibition as a fair sharing of risk in this setting, which is also consistent with the analogous assumption-of-risk approach used by the Legislature to allocate risks in other recreational settings with limited retained-liability imposed on operators.

[Stelluti, supra, 203 N.J. at 312-313 (emphasis added).]

Indeed, the legal question presented by this case, whether a fitness center or health club can insulate itself through an exculpatory clause from the ordinary common law duty of care owed by all businesses to its invitees, was specifically not addressed or decided by the Court in Stelluti. We again quote directly Justice LaVecchia's emphatic, cautionary language addressing this issue:

In the instant matter, like the Appellate Division, we feel no obligation to reach and discuss the validity of other aspects of the agreement not squarely presented by the facts of Stelluti's case. Thus, we need not address the validity of the agreement's

disclaimer of liability for injuries that occur on the club's sidewalks or parking lot that are common to any commercial enterprise that has business invitees. With respect to its agreement and its limitation of liability to the persons who use its facility and exercise equipment for the unique purpose of the business, we hold that it is not contrary to the public interest, or to a legal duty owed, to enforce [the defendant]'s agreement limiting its liability for injuries sustained as a matter of negligence that result from a patron's voluntary use of equipment and participation in instructed activity. <u>As a result, we find the exculpatory agreement between [the defendant] and Stelluti enforceable as to the injury Stelluti sustained when riding the spin bike</u>.

[<u>Id.</u> at 313 (emphasis added).]

Here, defendant submitted to the trial court a "Statement of Material Facts" in support of its motion for summary judgment. Paragraph three alleges plaintiff was injured when "<u>he slipped on the steps leading from the pool</u>." (Emphasis added). In response, plaintiff stipulated to this allegation, but added a reference to a photograph that, in his view, depicted "that the stair treads on defendant's stairs incorporated slip resistant rubber on all stairs, but for the bottom stair where same evidently was cut off due to wear, thereby creating a non-slip resistant tread surface." The "stairs" referred to by plaintiff led to an indoor pool in defendant's facility in Newark.

At the time the accident occurred, plaintiff had been a member of this YMCA for over three years. The continuous health membership agreement he signed contains the following exculpatory or "hold harmless" provision, which we recite as written in the agreement, using all capital letters:

> I AGREE THAT THE **YMWCA** WILL NOT BE RESPONSIBLE FOR ANY PERSONAL INJURIES OR LOSSES SUSTAINED BY ME WHILE ON ANY **YMWCA** PREMISES OR AS A RESULT OF A **YMWCA** SPONSORED ACTIVITIES [SIC]. I FURTHER AGREE TO INDEMNIFY AND SAVE HARMLESS THE **YMWCA** FROM ANY CLAIMS OR DEMANDS ARISING OUT OF ANY SUCH INJURIES OR LOSSES.

II

We review a motion seeking summary judgment using the same standard used by the trial judge. Bhagat v. Bharat A. Bhagat & Cranbury Hotels, LLC, 217 N.J. 22, 38 (2014). We must determine, based on the competent evidential materials submitted by the parties, whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46-2(c). Based on our review of the record, we are satisfied there are no

material issues of fact in dispute, and the case is ripe for disposition as a matter of law.[1]

The plaintiff in Stelluti, supra, was injured when the handlebars of her stationary bike dislodged and caused her to fall during a spinning class at a private fitness center. 203 N.J. at 291. The inherently risky nature of this type of physical activity was the key consideration the Court found to justify enforcing the exculpatory clause at issue. Id. at 312-313.

Here, plaintiff's accident and resulting injuries occurred when plaintiff slipped on a step and fell, as he walked to defendant's indoor pool. Plaintiff did not injure himself while swimming in the pool or using any physical fitness equipment. The type of accident involved here could have occurred in any business setting. The inherently risky nature of defendant's activities as a physical fitness club was immaterial to this accident. Stated in the vernacular of the personal injury bar, this is a "garden variety slip and fall case."

---

[1] At this point, we must note that plaintiff's appellate brief failed to present the salient facts of this case in compliance with the rules of appellate practice. We were thus compelled to conduct our own independent review of the record to ascertain the facts that established the basis of plaintiff's claim. We will address counsel's deficiency in more detail after we complete our analysis of the issues raised by the parties in this appeal.

Under these circumstances, plaintiff argues here, as he did at the trial level, that defendant should be held liable to compensate him for his injuries pursuant to the common law duty all business owners owe to its invitees. Our colleague Judge Sabatino aptly described that duty of care in the Appellate Division's decision in Stelluti v. Casapenn Enters., 408 N.J. Super. 435, 446 (App. Div. 2009), aff'd, 203 N.J. 286 (2010):

> In general, "[b]usiness owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is in the scope of the invitation." Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563, (2003). This duty of care flows from the notion that "business owners 'are in the best position to control the risk of harm.'" Hojnowski v. Vans Skate Park, 187 N.J. 323, 335 (2006) (quoting Kuzmicz v. Ivy Hill Park Apts., Inc., 147 N.J. 510, 517 (1997) (citations omitted)); see also Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 447 (1993).

We are thus compelled to address and answer the question the Supreme Court intentionally left unanswered in Stelluti, to wit: whether an exculpatory clause that insulates a physical fitness club, like defendant, from liability "for any personal injuries or losses sustained by [a member] while on any [of the club's] premises" is enforceable when the accident and resulting injuries sustained by the member/invitee was not caused by or related to an inherently risky physical fitness activity. In

answering this question, we will apply the same standards the Supreme Court applied in Stelluti.

An exculpatory agreement:

> "is enforceable only if: (1) it does not adversely affect the public interest; (2) the exculpated party is not under a legal duty to perform; (3) it does not involve a public utility or common carrier; or (4) the contract does not grow out of unequal bargaining power or is otherwise unconscionable."
>
> [Stelluti, supra, 203 N.J. at 298 (quoting Gershon v. Regency Diving Ctr., Inc., 368 N.J. Super. 237, 248 (App. Div. 2004)).]

Applying the Gershon factors, we emphasize "that business establishments in New Jersey have well-established duties of care to patrons that come upon their premises." Stelluti, supra, 408 N.J. Super. at 455 (citing Cardona v. Eden Realty Co., 118 N.J. Super. 381 (App. Div.), certif. denied, 60 N.J. 354 (1972) (finding an exculpatory clause, which attempted to immunize a residential landlord from negligence contrary to public policy); Kuzmiak v. Brookchester, Inc., 33 N.J. Super. 575, 580-88 (App. Div. 1955) (nullifying a similar exculpatory provision in an apartment lease)).

We will examine the provisions of this exculpatory clause in defendant's agreement giving due deference to the freedom to contract and the right of competent adults to bind themselves as they see fit. Stelluti, supra, 203 N.J. at 302-303. However,

we are mindful that exculpatory agreements "have historically been disfavored in law and thus have been subjected to close judicial scrutiny." Id. at 303. Any ambiguities in language about the scope of an exculpatory agreement's coverage, or doubts about its enforceability, should be resolved in favor of holding a tortfeasor accountable. "The law does not favor exculpatory agreements because they encourage a lack of care." Gershon, supra, 368 N.J. Super. at 247; see also Hojnowski, supra, 187 N.J. at 333.

Judge Sabatino noted in the Appellate Division version of Stelluti, supra, that an exculpatory clause construed

> to its outermost limits of protection . . . [would preclude] literally any and all claims or causes of action[.] [Such a prospect] threatens an adverse impact upon the public interest. As we have already noted, business establishments in New Jersey have well-established duties of care to patrons that come upon their premises. An unbounded waiver of liability unjustifiably eviscerates those protections for business invitees.
>
> [408 N.J. Super. at 455 (internal quotations omitted).]

Given the expansive scope of the exculpatory clause here, we hold that if applied literally, it would eviscerate the common law duty of care owed by defendant to its invitees, regardless of the nature of the business activity involved. Such a prospect would be inimical to the public interest because

it would transfer the redress of civil wrongs from the responsible tortfeasor to either the innocent injured party or to society at large, in the form of taxpayer-supported institutions. This directly addresses and responds to factors one and two under Gershon, supra, 368 N.J. Super. at 248.[2]

The "Waiver and Release Form" in Stelluti, supra, included a relatively lengthy narrative explanation of the inherent risk of being seriously injured while engaging in strenuous physical exercise. 203 N.J. at 293. Here, the exculpatory clause, although far more brief in language, is considerably more legally expansive in the scope of activity defendant sought to insulate from civil liability. By signing the membership agreement, plaintiff purportedly agreed to hold defendant harmless "for any personal injuries or losses sustained by me while on any YMCA premises or as a result of a YMCA sponsored activities." The key word here is the disjunction "or," which expands the scope of the exculpatory clause to include injuries

---

[2] In the interest of clarity, our analysis and ultimate legal conclusion are predicated on the facts of this case. Echoing the cautionary message sent by Justice LaVecchia in Stelluti, we do not hold here that all business operators are precluded from contractually bargaining away their common law duty owed to invitees to provide a reasonably safe environment for doing that which is in the scope of the invitation. Every case in which one party seeks to enforce contractually bargained-for exculpatory protection from a certain kind of liability must be examined and decided based on the particular circumstances of the case.

resulting "while on the premises" or as a result of participating in defendant's "sponsored activities."

We reasonably assume the agreement, especially the exculpatory clause, signed by plaintiff is a contract of adhesion, thus meeting the final relevant factor under Gershon, supra, 368 N.J. Super. at 248. As the Court did in Stelluti, supra, we recognize that "[w]hen a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected." 203 N.J. at 305. However, all contracts are subject to judicial scrutiny to determine their enforceability. Here, defendant seeks to shield itself from all civil liability, based on a one-sided contractual arrangement that offers no countervailing or redeeming societal value. Such a contract must be declared unenforceable as against public policy.

Finally, defendant also argues that swimming in the pool is a "sponsored activity," and therefore an accident resulting from slipping on the steps leading into the pool is also covered under the "activities" part of the clause. Such an interpretation ignores the cause of this accident. Plaintiff was not injured using the pool. Thus, based on the record before us, we conclude the language in defendant's exculpatory

clause is void and unenforceable as against public policy for the reasons expressed here.

III

Unfortunately, we cannot complete our task as appellate judges without noting appellant's counsel's complete disregard of <u>Rule</u> 2:6-2(a)(4), which describes in detail how an appellant's brief must present the facts of the case. A brief must include

> A concise statement of the facts material to the issues on appeal supported by references to the appendix and transcript. <u>The statement shall be in the form of a narrative chronological summary incorporating all pertinent evidence and shall not be a summary of all of the evidence adduced at trial, witness by witness</u>.
>
> [<u>Ibid.</u> (Emphasis added).]

In utter disregard of these precisely worded instructions, plaintiff's appellate brief contained the following information under the heading "STATEMENT OF FACTS":

> As indicated in plaintiff's answers to interrogatories (Pa10-12), on 3/21/12 plaintiff slipped and fell due to a defective stair riser at defendant's premise. Attached please find medical records documenting plaintiff's injuries as follows:
>
> 1. 03/23/12 UMDNJ left knee surgical records (Pa47-48)
>
> 2. Left knee Scar photograph (Pa49)

13

We take the time to note these deficiencies not out of some eccentric compulsion or fastidious need to enforce procedural formalities. Failure by an attorney to clearly and accurately narrate the salient facts of a case, followed by a precise citation to the page number in the appendix or transcript, needlessly increases the amount of time and effort required to familiarize ourselves with the appellate record. This also shows a lack of professional respect, not only to the court, but to the legal profession itself. Some may say this kind of professional shoddiness is an unfortunate byproduct of our times. This not the case. As our colleagues aptly observed thirty-seven years ago:

> [Rule] 2:6-2, prescribing the contents of an appellant's brief, is not without purpose. A conforming brief will give this court the full benefit of counsel's knowledge of the case. Material deficiencies, such as those encountered in appellant's brief, require this court to consume time in an effort to guess at the essential nature of the controversy from the testimony which gave rise to it, instead of devoting its necessarily limited time to determining how the issues properly raised should be resolved. Besides being an imposition on this court, such deficiencies are patently unfair to other litigants whose equally legitimate demands on the court's time are presented in a manner conforming in all respects to the requirements of the rules.
>
> [Miraph Enters., Inc. v. Bd. of Alco. Bev., Paterson, 150 N.J. Super. 504, 508 (App. Div. 1977) (emphasis added.)]

A-1062-12T3

Our colleagues also noted that "[l]ack of familiarity with appellate court procedures is no excuse. R[ule] 2:6-2 is clear and unambiguous in its requirements. Attorneys who rarely appear in this court need only consult this rule to determine what is required. The brief herein shows a flagrant disregard of the minimum rule requirement." Ibid. Our sentiment in Miraph Enters., was approvingly cited and the indignation expressed therein adopted by our Supreme Court in In re Haft, 98 N.J. 1, 8 (1984).

The attorney in Miraph Enters., supra, was sanctioned under Rule 2:9-9 in the form of a $100 fine "to be paid personally and not billed to his client." 150 N.J. Super. at 508. In determining the severity of this monetary sanction, we emphasize this opinion was published in 1977. Our colleagues nevertheless noted:

> We recognize that the modest fine imposed provides an inadequate response to the serious violation of rule requirements; its imposition and payment will, we earnestly hope, be viewed as evidence of the refusal of this court to tolerate similar infractions of the rule which, in the future, may not be disposed of with such financial leniency.
>
> [Ibid. (Emphasis added).]

Adjusting for inflation for the past thirty-seven years, we estimate the comparable value in 2014 would be approximately

$400. We seriously considered imposing such a sanction here for the same policy reason of deterrence our colleagues expressed in <u>Miraph Enters.</u> We nevertheless opt to forgo this option, hoping the strongly worded message we deliver here will produce the same deterrent effect.

All judges were lawyers for at least ten years before accepting this great responsibility. <u>N.J. Const.</u> art. VI, § 6, ¶ 2. No matter how long we have held this Constitutional office, none of us ever forget how hard we worked when we practiced law, the emotional toll our career exacted on us personally and on our loved ones, and the economic pressure involved in managing the business side of a law office. However, both lawyers and judges have a common obligation to discharge the respective responsibilities of our office, ever mindful of our ethical duty to uphold the highest possible standards of the legal profession. The kind of shoddy work presented by appellant's counsel here diminishes our profession and must be condemned as unacceptable in the strongest possible terms.

IV

The order of the Law Division granting defendant's motion for summary judgment and dismissing plaintiff's personal injury cause of action is reversed. The matter is remanded for such

16

further proceedings as may be required. We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17                                                    A-1062-12T3