NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4438-15T1

ROBERT MELLET and BETTY EVANS,
on behalf of themselves and other
persons similarly situated,

    Plaintiffs-Appellants,

v.

AQUASID, LLC, t/a FUTURE FITNESS
POWERED BY AFC,

    Defendant-Respondent.

---

| APPROVED FOR PUBLICATION |
| --- |
| October 16, 2017 |
| APPELLATE DIVISION |

Argued May 4, 2017 — Decided June 21, 2017

Before Judges O'Connor, Whipple, and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-516-15.

Andrew P. Bell argued the cause for appellants (Locks Law Firm, L.L.C. and the Law Office of Charles N. Riley, L.L.C., attorneys; Michael Galpern, James A. Barry, Charles N. Riley, and Mr. Bell, on the brief).

Sean X. Kelly argued the cause for respondent (Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., attorneys; Sean Robins and Mr. Kelly, on the brief).

The opinion of the court was delivered by

MAWLA, J.S.C., t/a

Plaintiffs Robert Mellet and Betty Evans appeal from an April 29, 2016 order denying class certification and granting defendant summary judgment. We affirm.

We derive the following facts from the record. Defendant Aquasid, LLC, is a health club operated at two locations in Cherry Hill, New Jersey. Plaintiffs entered membership agreements with defendant on February 21, 2014, and subsequently stopped paying their memberships. Specifically, when Mellet sought to cancel his membership in July 2014, defendant declined his request and charged him $1,256.71, comprised of three months of late fees, a collection fee, administrative fee, and fifteen months of dues. Defendant attempted to collect these funds from Mellet. In September 2014, Evans sought to cancel her membership, but defendant declined her request. Evans' October 2014 payment was declined for insufficient funds and she was charged a $25 fee. Defendant continued to charge Evans, and sought to collect $198.34 from her.

Plaintiffs filed suit asserting the form of their membership contracts and the fees defendant charged violate the Retail Installment Sales Act (RISA), Consumer Fraud Act (CFA), Health Club Services Act (HCSA), and the Truth in Consumer Contract, Warranty, and Notice Act (TCCWNA). They allege at least one hundred other similarly improper contracts were entered into by other members. Plaintiffs sought class certification for all

2                                                                    A-4438-15T1

persons who entered into a membership agreement with defendant on or after April 9, 2008.  Defendant contested class certification and moved for summary judgment.

After hearing oral argument, the trial judge denied plaintiffs' motion for class certification and granted defendant's request for summary judgment.  Regarding plaintiffs' individual claims, the trial judge concluded RISA did not apply to defendant's installment contracts with plaintiffs because the contracts did not afford them an ownership interest in either an object or service at its conclusion.  The trial judge also found Attorney General review and approval of the membership forms containing the contract fees, as required by the HCSA, barred any claim under RISA, and concluded defendant's exculpatory clause was enforceable.

The trial judge found plaintiffs did not have a clearly established right under TCCWNA to assert their waiver claim.  He found no CFA claim because the fees plaintiffs sought to recover under the CFA were RISA fees, which were barred because defendant's membership agreements passed muster under the HCSA.  The trial judge did not make any findings as to the HCSA requirement that the total fees charged appear on the front of the contract.

Class certification was denied for lack of the necessary predominance on the issue of calculation of total fees and whether

the total fees must appear on the front of every contract, as required by the HCSA. The trial judge concluded HCSA claims are individual in nature, not class based, because defendant's contracts contained no common price. Finding no individual or class claims, the trial judge entered summary judgment for defendant. This appeal followed.

Plaintiffs contend the trial judge erred in granting summary judgment because the membership agreements violate RISA, the HCSA, TCCWNA, and CFA. They contend New Jersey favors class certification, and all the prerequisites to certification under Rule 4:32-1(a) were met, as well as the requirements of independent justification for class certification required by Rule 4:32-1(b). Plaintiffs further contend the trial judge erred in considering defendant's cross motion for summary judgment on short notice.

We review the grant of summary judgment by a trial court de novo. Templo Fuente De Vida Corp. v. Nat'l. Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). We apply the same principles governing an adjudication of a motion for summary judgment as the trial court. Atl. Mut. Ins. Co. v. Hillside Bottling Co., 387 N.J. Super. 224, 230 (App. Div.), certif. denied, 189 N.J. 104 (2006). Rule 4:46-2(c) states an order granting summary judgment shall be entered if "the pleadings, depositions, answers to interrogatories and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." A fact is material if it is substantial in nature. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995).

"A court deciding a summary judgment motion does not draw inferences from the factual record as does the factfinder in a trial, 'who may pick and choose inferences from the evidence to the extent that a miscarriage of justice under the law' is not created." Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016) (quoting Brill, supra, 142 N.J. at 536). Rather, in reviewing summary judgment orders, the Court must look at the facts in a light most favorable to the non-moving party and determine whether a genuine issue of material fact exists sufficient to be tried. See Brill, supra, 142 N.J. at 523.

I.

Plaintiffs argue RISA covers health club contracts because the plain language of RISA specifically states it applies to services, including health club services. They assert the trial judge's interpretation of RISA is contradictory to the finding of our Supreme Court in Perez v. Rent-A-Center, 186 N.J. 188 (2006), cert. denied, 549 U.S. 115, 127 S. Ct. 984, 166 L. Ed. 2d 710 (2007).

The health club contracts at issue here were twenty-month membership contracts payable in monthly installments. Plaintiffs state these contracts also included various administrative and late fees charged month-to-month for the period of the contract. They argue defendant committed several clear violations of RISA: charging a late fee of more than $10, N.J.S.A. 17:16C-42(a); charging more than $20 for a returned check for insufficient funds, N.J.S.A. 17:16C-42(e); charging more than $10 for a collection fee, N.J.S.A. 17:16C-42(b); and applying charges to customer accounts, which were not court costs, attorney fees, or the expense to retake goods authorized by law, N.J.S.A. 17:16C-50.

Defendant argues RISA does not apply to their membership agreements and Perez controls because the entire premise of the installment sales contract contemplated by RISA is possession and eventual ownership of a specified good by a buyer. Defendant argues plaintiffs were paying not to eventually own but rather to utilize the gym's facilities and equipment, and, thus, the RISA claim was properly dismissed. We agree.

RISA defines a retail installment contact as:

> [A]ny contract, other than a retail charge account or an instrument reflecting a sale pursuant thereto, entered into in this State between a retail seller and a retail buyer evidencing an agreement to pay the retail purchase price of goods or services, which are primarily for personal, family or household

A-4438-15T1

purposes, or any part thereof, in two or more installments over a period of time. This term includes a security agreement, chattel mortgage, conditional sales contract, or other similar instrument and any contract for the bailment or leasing of goods by which the bailee or lessee agrees to pay as compensation a sum substantially equivalent to or in excess of the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of such goods upon full compliance with the terms of such retail installment contract.

[N.J.S.A. 17:16C-1(b).]

The term "'[s]ervices' means and includes work, labor and services, professional and otherwise which are primarily for personal, family or household purposes but does not include services which are subject to the 'Home Repair Financing Act,' and insurance premiums financing which is subject to the 'Insurance Premium Finance Company Act.'" N.J.S.A. 17:16C-1(s).

In Perez, the Court stated:

In enacting RISA, the stated legislative purpose was protection of the public interest through the regulation of the charges associated with the time sale of goods. By including conditional sales, chattel mortgages, security interests, leases, and similar instruments within RISA's protective ambit, the Legislature signaled that it intended to sweep into the Act as many cognate agreements as possible, even those that did not strictly fall within a denominated category. That broad mandate, along with the well-established notion that remedial statutes like RISA should be liberally construed to achieve their salutary aims,

> require questions regarding the applicability of the statute to be resolved in favor of consumers for whose protection RISA was enacted.
>
> [Perez, supra, 186 N.J. at 209 (citations omitted).]

The thrust of RISA is to "protect consumers from themselves and rapacious sellers." See id. at 218. Thus, the Legislature aimed to protect the public interest regarding the sale of goods. See id. at 209.

Although the Perez Court stated RISA should be construed broadly, the statute itself refers to the following categories: "security agreement, chattel mortgage, conditional sales contract or other similar instrument." N.J.S.A. 17:16C-1(b). We fail to see how a health club membership agreement is similar to any of the enumerated instruments. Health club members are not in the category of consumers RISA is designed to protect, because these contracts do not involve the sale of goods. For these reasons, we agree with the trial judge RISA does not apply and affirm dismissal of that count of plaintiffs' complaint. Also, because it is undisputed plaintiffs' CFA claim is dependent upon their RISA claim, we affirm the judge's summary judgment dismissal of the CFA claim as well.

II.

8

Plaintiffs assert defendant's exculpatory clause is the type of overly broad contract barred by TCCWNA. Plaintiffs argue their TCCWNA claims should have survived summary judgment because in Bosland v. Warnock Dodge, Inc., 197 N.J. 543, (2009), the Supreme Court held TCCWNA "prohibits any provision in a consumer contract requiring a customer to waive his or her rights under the Act." They assert the Bosland Court stated TCCWNA "should be broadly construed in favor of consumers," and, thus, TCCWNA prohibits broad exculpatory clauses of the type found in defendant's membership contract.

Plaintiffs assert the trial judge incorrectly applied Stelluti v. Casapenn Enterprises, LLC, 203 N.J. 286 (2010), where the Supreme Court upheld the validity of limited liability waivers for injuries suffered while exercising at a health club. They argue the holding in Stelluti was narrow and specific to "injuries sustained as a matter of negligence that result from a patron's voluntary use of equipment and participation in instructed activity." See id. at 313. Plaintiffs cite Walters v. YMCA, 437 N.J. Super. 111, 120 (App. Div. 2014), where we considered a waiver in the context of a slip and fall case at a gym, and held when a "defendant seeks to shield itself from all civil liability, based on a one-sided contractual arrangement that offers no

countervailing or redeeming societal value[,] [s]uch a contract must be declared unenforceable as against public policy."

Defendant refutes plaintiffs' broad reading of <u>Walters</u>. Rather, defendant contends the court in <u>Walters</u> stated the enforceability of an exculpatory clause in a health club membership contract must be decided on a case-by-case basis.

Our review begins with the statute itself. TCCWNA states:

> No consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act. Any such provision shall be null and void. No consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey; provided, however, that this shall not apply to warranties.
>
> [<u>N.J.S.A.</u> 56:12-16.]

<u>Stelluti</u> and <u>Walters</u> address the validity of exculpatory clauses in health club contracts. In <u>Stelluti</u>, the Court stated:

> In sum, the standard we apply here places in fair and proper balance the respective public-policy interests in permitting parties to freely contract in this context (i.e. private fitness center memberships) and requires private gyms and fitness centers to adhere to a standard of conduct in respect of their business. Specifically, we hold such business owners to a standard of care congruent with the nature of their business, which is to make available the specialized equipment and

> facility to their invitees who are there to exercise, train, and to push their physical limits. That is, we impose a duty not to engage in reckless or gross negligence. We glean such prohibition as a fair sharing of risk in this setting, which is also consistent with the analogous assumption-of-risk approach used by the Legislature to allocate risks in other recreational settings with limited retained-liability imposed on operators.
>
> [Stelluti, supra, 203 N.J. at 312-13.]

The ruling in Stelluti was expressly premised on the fact the plaintiff there was engaging in the type of strenuous physical activity normally undertaken at a gym, creating an inherent risk of injury.

In Walters, we addressed whether an exculpatory clause was proper where an injury at a health club facility occurred not as a result of engaging in the type of strenuous activity creating an inherent risk, but as the result of ordinary negligence. Walters, supra, 437 N.J. Super. at 111. We applied the same standard as the Supreme Court in Stelluti, noting an exculpatory agreement:

> [I]s enforceable only if: (1) it does not adversely affect the public interest; (2) the exculpated party is not under a legal duty to perform; (3) it does not involve a public utility or common carrier; or (4) the contract does not grow out of unequal bargaining power or is otherwise unconscionable.

A-4438-15T1

[<u>Id.</u> at 117-18 (quoting <u>Stelluti</u>, <u>supra</u>, 203 <u>N.J.</u> at 298).]

We held the exculpatory clause at issue was unenforceable as against public policy because it "eviscerated" the health club's ordinary duty of care by shielding it from injuries occurring while patrons utilize its equipment and also immunized the health club from liability for any injury occurring on its premises, even those having nothing to do with exercise.  <u>Id.</u> at 118-20.

Here, defendant's exculpatory clause states:

> I/we accept full responsibility for my/our use of any and all apparatus, appliance, facility, privilege, or service, whatsoever, owned and operated by FF/AFC, or while engaging in any contest, games function, exercise, either on or off the FF/AFC premises, and shall do so at my/out own risk and shall hold FF/AFC, it's owners, partners, shareholders, directors, officers, employees, representatives, agents and/or affiliated companies, harmless from any and all loss, claim, injury, damage or liability sustained or incurred by me/us, resulting from any act or omission of any owner, partner, shareholder, directors, officers, employees, representatives, agents and/or affiliated companies hereunder in respect of any such loss, cost, claim injury, damage or liability sustained or incurred by using FF/AFC's services and facilitates.

Plaintiffs' challenges to this exculpatory clause are not for injuries suffered at a health club as in <u>Stelluti</u> and <u>Walters</u>. Rather, plaintiffs argue the mere existence of the clause violates TCCWNA because it exculpates defendant from the type of liability

12

barred in _Walters_ and _Stelluti_. TCCWNA mandates no "business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right. . . ." _N.J.S.A._ 56:12-15. TCCWNA prohibits any contract from requiring a party to sign away a clearly established right. See _N.J.S.A._ 56:12-16.

The language in defendant's exculpatory clause is more analogous to the exculpatory clause in _Stelluti_. However, unlike _Stelluti_, it does not contain any waiver for slip and fall type incidents, which we barred in _Walters_. See _Walters_, _supra_, 437 _N.J. Super._ at 115. Therefore, defendant's exculpatory clause is facially enforceable, because it neither broadly waives exercise-related injuries, nor negates defendant's ordinary duty of care, which may not be waived as contrary to public policy. See _id._ at 113. For these reasons, the trial judge's determination of the waiver issue is affirmed.

### III.

Plaintiffs contend the trial judge did not state his reasoning for dismissal of the HCSA claims. They state the membership agreements at issue did not include the total payment obligation on the first page of the membership agreement as required by the

HCSA. See N.J.S.A. 56:8-42(b). Thus, plaintiffs argue dismissal of this claim was improper.

In opposition, defendant points out the form of the contracts at issue was subject to review by the Attorney General, who did not find any violations. Defendant also notes plaintiffs' contracts contained the total payment information on the first page of the document.

The HCSA states,

> A health club services contract shall specifically set forth in a conspicuous manner on the first page of the contract the buyer's total payment obligation for health club services to be received pursuant to the contract.
>
> [N.J.S.A. 56:8-42.]

The record reveals the trial judge did not make any findings about the display of the total membership cost on the front page of the agreement as required by N.J.S.A. 56:8-42. Therefore, pursuant to Rule 2:10-5 we elect to exercise original jurisdiction to adjudicate this issue. As stated by our Supreme Court,

> [r]esort to original jurisdiction is particularly appropriate to avoid unnecessary further litigation, as where the record is adequate to terminate the dispute and no further fact-finding or administrative expertise or discretion is involved, and thus a remand would be pointless because the issue to be decided is one of law and implicates the public interest.

14

> [*Price v. Himeji, LLC*, 214 <u>N.J.</u> 263, 294 (2013) (citing <u>Vas v. Roberts</u>, 418 <u>N.J. Super.</u> 509, 523-24 (App. Div. 2011) (alteration in original)).]

Here, the record reveals plaintiffs' health membership agreements contained the total amount owed on a monthly basis on the first page of their contracts. For these reasons, summary judgment as to this issue is proper.[1]

Because we have found plaintiffs do not have any viable claims, we do not reach the issue of the denial of class certification. We also decline to address plaintiffs' claim the trial judge improperly considered defendant's cross-motion on short notice. The transcript demonstrates, by virtue of an adjournment the trial judge granted, plaintiffs had sufficient time to respond and did not seek permission to file a sur-reply. Furthermore, the record reveals at oral argument plaintiffs requested more time to file a statement of material facts, but failed to argue which facts were in dispute beyond the facts already before the trial judge to necessitate an additional filing. Likewise, we do not address plaintiffs' TCCWNA claims derived from RISA, the CFA, and HCSA, because we have found these claims are not independently viable.

---

[1] We note here appellants' motion to supplement the record on appeal is denied.

A-4438-15T1

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

16