**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3229-19

LEAH SKARBNIK,

     Plaintiff-Appellant,

v.

LIFE TIME FITNESS, INC.,

     Defendant-Respondent.

_____

Argued August 17, 2021 – Decided September 2, 2021

Before Judges Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket Nos. L-0669-18 and L-0668-19.

Kristofer Petrie argued the cause for appellant (Brach Eichler, LLC, attorneys; Kristofer Petrie, on the briefs).

Samuel M. Goffinet argued the cause for respondent (Ahmuty, Demers & McManus, attorneys; Samuel M. Goffinet and Francis Liu, of counsel and on the brief).

PER CURIUM

Plaintiff commenced this action against defendant Life Time Fitness, Inc. (Life Time), alleging she had slipped and fallen on sweat on the floor of a yoga studio at Life Time's Florham Park fitness facility as she was leaving a hot yoga class. She appeals from an order granting defendant's summary-judgment motion and dismissing her claims with prejudice, the motion judge's refusal to hear her application during oral argument to amend the complaint to add a gross-negligence claim, and an order denying her motion for reconsideration. Agreeing with the motion judge that the parties' contract barred plaintiff's negligence claim and that the oral application for leave to amend the complaint was improper, we affirm.

I.

We take the facts from the summary-judgment record, viewing them in a light most favorable to plaintiff. See Bauer v. Nesbitt, 198 N.J. 601, 604 n.1 (2009); see also Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016).

Plaintiff became a member of Life Time's Florham Park facility on July 22, 2011, when she agreed to and executed a Life Time Member Usage Agreement (MUA). The MUA contained an assumption-of-risk provision, which stated under a bolded title "ASSUMPTION OF RISK":

> I understand that there is an inherent risk of injury, whether caused by me or someone else, in the use of or

A-3229-19

presence at a Life Time Fitness center, the use of equipment and services at a Life Time Fitness center, and participation in Life Time Fitness' programs. This includes, but is not limited to, indoor and outdoor pool areas with waterslides, a climbing wall area, ball and racquet courts, cardiovascular and resistance training equipment, personal training and nutrition classes and services, member programs, a child center, and spa and cafe products and services. This risk includes, but is not limited to:

1) Injuries arising from the use of any of Life Time Fitness' centers or equipment, <u>including any accidental or "slip and fall" injuries</u>;

2) <u>Injuries arising from participation in supervised or unsupervised activities and programs within a Life Time Fitness center</u> or outside a Life Time Fitness center, to the extent sponsored or endorsed by Life Time Fitness;

3) Injuries or medical disorders resulting from exercise at a Life Time Fitness center, including, but not limited to heart attacks, strokes, heart stress, sprains, broken bones and torn muscles or ligaments; and

4) Injuries resulting from the actions taken or decisions made regarding medical or survival procedures.

I understand and voluntarily accept this risk. I agree to specifically assume all risk of injury, whether physical or mental, as well as all risk of loss, theft or damage of personal property for me, any person that is a part of

3

A-3229-19

this membership and any guest under this membership while such persons are using or present at any Life Time Fitness center, using any lockers, equipment, or services at any Life time Fitness center or participating in Life Time Fitness' programs, **whether such programs take place inside or outside of a Life Time Fitness center.**

[Emphasis added.]

The MUA also contained a release-of-liability provision, stating under a bolded title "RELEASE OF LIABILITY":

I waive any and all claims or actions that may arise against Life Time Fitness, Inc., its affiliates, subsidiaries, successors or assigns (collectively, "Life Time Fitness") as well as each party's owners, directors, employees or volunteers as a result of any such injury, loss, theft or damage to any such person, including and without limitation, personal, bodily or mental injury, economic loss or any damage to me, my spouse, my children, or guests resulting from the negligence of Life Time Fitness or anyone else using a Life Time Fitness center.

Above plaintiff's signature is the following in bold:

I HAVE READ AND AGREE TO THE TERMS AND CONDITIONS ABOVE, INCLUDING, BUT NOT LIMITED TO, THE ASSUMPTION OF RISK AND RELEASE OF LIABILITY, AND I HAVE RECEIVED A COMPLETE COPY OF MY MEMBER USAGE AGREEMENT.

Plaintiff visited the Florham Park facility 1,756 times between the date her membership began and the date of the accident. Prior to the accident,

4

plaintiff had been attending hot yoga classes for at least a year, six or seven times per week. Each of the hot yoga classes she attended was held in the same studio at the Florham Park facility. The studio has "semi-shiny dark wood floors," three big windows with curtains that look out onto an indoor pool, and a small window on the entry door that lets light into the studio. The classes were "fast paced" and "extremely hot," with the temperature inside the studio set to over ninety degrees. Before the accident, plaintiff was aware that due to the nature of the class, participants would sweat. She characterized the participants in the hot yoga class on the day of the accident as being "extremely sweaty." During hot yoga classes, the floor gets wet with sweat and water.

On June 29, 2017, plaintiff attended a 9:00 a.m. hot yoga class at defendant's Florham Park facility. The class usually lasted one hour. The accident occurred around 10:00 a.m. Plaintiff was barefoot; she typically practiced hot yoga barefoot because shoes were not allowed in the studio. The class performed "namaste," which according to plaintiff "means the class is over." The lights were off, the curtains on the three big windows were closed, and plaintiff "laid there for about [forty-five] seconds." Plaintiff testified "at the end of [y]oga you are in a meditative state. You can stay there as long as you would like." Eventually, the lights are turned on "because at the end of class

A-3229-19

another class comes in." Because she had to leave, she rolled up her mat while the class was still dark and "most people [were] still laying down." Out of respect for others, "you don't really want to step on someone else's mat." So, she tried to "zigzag around [other people's mats] to get to the door." At a point where she was trying not to step on someone's mat, she placed her right foot "on liquid and landed on [her] elbow." The liquid was someone else's sweat.[1] As a result of her fall, plaintiff sustained severe injuries to her right elbow, requiring her to undergo surgery.

Plaintiff filed a complaint in which she pleaded one count of ordinary negligence, alleging defendant was negligent in that it allowed or created a dangerous condition to exist on the premises – "a wet and slippery floor" – and failed to warn people about it. In an interrogatory response, plaintiff described the "dangerous condition" as "consisting of sweat and/or water and/or darkness." Plaintiff did not assert in the complaint that defendant had engaged in intentional, reckless, or grossly-negligent conduct. In its answer, defendant asserted as affirmative defenses that the case should be dismissed because

---

[1] During her deposition, plaintiff identified the liquid as sweat or someone else's drink. In opposition to defendant's summary-judgment motion, plaintiff asserted she "slipped and fell on sweat." In her appellate brief, she refers to the liquid as someone else's sweat.

plaintiff had "assumed the risk" and had "waived and/or released her right to pursue the cause of action."

After discovery ended, defendant moved for summary judgment, arguing the MUA's exculpatory language governing ordinary negligence claims arising out of fitness and exercise activities barred plaintiff's claim.[2] Plaintiff opposed the motion but did not cross move for leave to amend the complaint. During oral argument, plaintiff's counsel asked the motion judge for leave to amend the complaint to add a count for gross negligence.

The motion judge declined to hear plaintiff's oral application for leave to amend the complaint to add a gross-negligence count. Finding plaintiff "had plenty of time that you knew you need[ed] to amend it" and that it was not "something that just popped up," the judge held the oral application was improper, not provided for in the rules, and unfair. The judge urged plaintiff to file a motion and stated it would be heard. Plaintiff apparently never filed the motion.

After hearing oral argument, the motion judge found "sweat on the floor" was a "natural consequence" of hot yoga and that when plaintiff fell, "she was

---

[2] Defendant also argued plaintiff had not established notice of the allegedly dangerous condition. The motion judge did not address that argument.

still participating."  Holding the language of the parties' contract was "not as broad as in some of the other cases" and that "the process of yoga . . . fits the language in Stelluti [v. Casapenn Enterprises, LLC, 203 N.J. 286 (2010)]," the motion judge granted defendant's summary-judgment motion and dismissed the complaint with prejudice and "without leave to re-file."

The motion judge subsequently denied plaintiff's motion for reconsideration, finding plaintiff had failed to:  identify any new or overlooked probative or competent evidence; demonstrate the decision was based on incorrect reasoning; and meet the burden for reconsideration.  The motion judge again concluded plaintiff "was using the facility's equipment in its ordinary course—i.e., participating in a class in the yoga studio—and was injured due to the sort of ordinary negligence that was held to be exculpable by waiver in Stelluti," 203 N.J. at 313.

In this appeal, plaintiff argues the motion judge erred in holding plaintiff was injured as a result of her participation in defendant's hot yoga class and in not holding the MUA was too broad and unconscionable.  Plaintiff also argues the motion judge erred in failing to consider plaintiff's oral application for leave to amend the complaint to add a gross-negligence count.  Unpersuaded, we affirm.

## II.

We review a grant of summary judgment de novo, using the same standard that governs the motion judge's decision. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014); see also Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017); R. 4:46-2(c). We owe no special deference to the motion judge's legal analysis. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018). We review a decision on a motion for reconsideration under an abuse-of-discretion standard. Branch, 244 N.J. at 582.

## A.

"As a general and long-standing matter, contracting parties are afforded the liberty to bind themselves as they see fit." Stelluti, 203 N.J. at 302. However, exculpatory clauses, meaning clauses that absolve a party from future

A-3229-19

wrongdoing, are generally disfavored "essentially because they violate the aims underlying our tort law: deterrence of careless behavior and compensation by the wrongdoer for injuries sustained by victims." Marcinczyk v. State of N.J. Police Training Comm'n, 203 N.J. 586, 593 (2010). Because they are disfavored, the party seeking to enforce an exculpatory clause must show clearly that the party giving up the right to seek compensation from the alleged wrongdoer agreed to the exculpatory clause "voluntarily, intelligently and with the full knowledge of its legal consequences." Gershon v. Regency Diving Ctr., Inc., 368 N.J. Super. 237, 247 (App. Div. 2004). The clauses also must not "contravene public policy." Vitale v. Schering-Plough Corp., 231 N.J. 234, 248 (2017).

In Stelluti, our Supreme Court determined an exculpatory clause limiting a private gym from liability was enforceable under certain conditions. 203 N.J. at 313. The Court held "it is not contrary to the public interest, or to a legal duty owed, to enforce [an] agreement limiting [the defendant's] liability for injuries sustained as a matter of negligence that result from a patron's voluntary use of equipment and participation in instructed activity." Ibid. Similar to the agreement in Stelluti, id. at 305, the MUA featured prominently the terms limiting Life Time's liability, including "ASSUMPTION OF RISK" and

"RELEASE OF LIABILITY" and explicitly covered "negligence," "slip and fall" injuries arising from plaintiff's use of Life Time's centers or equipment, and "participation in supervised or unsupervised activities and programs within a Life Time Fitness center." Like the agreement in Stelluti, the MUA put the gym's patron on clear notice of the risks she was assuming and the liability she was waiving and did not violate public policy.

A private gym cannot "insulate itself through an exculpatory clause from the ordinary common law duty of care owed by all businesses to its invitees." Walters v. YMCA, 437 N.J. Super. 111, 115 (App. Div. 2014). In Walters, the plaintiff slipped on a stair tread. Ibid. That "garden variety slip and fall case," id. at 117, is not what we have here. Plaintiff fell in a yoga studio, which was a place where she had "engage[d] in strenuous physical activities," id. at 114, specifically, a hot yoga class, which she knew involved the participants sweating. Slipping on sweat while exiting a ninety-degree-heated and darkened hot yoga class is not the type of accident that "could have occurred in any business setting," id. at 117, but was related directly to her participation in defendant's hot yoga class. The motion judge correctly applied Stelluti in this case given these undisputed facts.

B.

Gross negligence isn't ordinary negligence; it is something more. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 363-64 (2016). Unlike ordinary negligence, gross negligence "is commonly associated with egregious conduct." Kain v. Gloucester City, 436 N.J. Super. 466, 482 (App. Div. 2014). It is "an indifference to another by failing to exercise even scant care or by thoughtless disregard of the consequences that may follow from an act or omission." Steinberg, 226 N.J. at 364-65. It is "more than inattention or mistaken judgment." Franco v. Fairleigh Dickinson Univ., 467 N.J. Super. 8, 37 (App. Div. 2021). The difference between ordinary negligence and gross negligence is recognized in our Model Civil Jury Charges, which include separate charges for ordinary negligence and gross negligence. See Model Jury Charges (Civil), 5.10A, "Negligence and Ordinary Care – General" (approved before 1984), and 5.12, "Gross Negligence" (approved Feb. 2004).

Plaintiff did not plead gross negligence. New Jersey is a notice-pleading state, meaning only a short statement of the claim needs to be pleaded. Velop, Inc. v. Kaplan, 301 N.J. Super. 32, 56 (App. Div. 1997). But the claim must be pleaded. See Bauer, 198 N.J. at 610 (finding "the fundament of a cause of action, however inartfully it may be stated, still must be discernable within the four

corners of the complaint"); Spring Motors Distribs., Inc. v. Ford Motor Co., 191 N.J. Super. 22, 29 (App. Div. 1983) (finding that pleadings must "fairly apprise the adverse party of the claims and issues to be raised at trial"), aff'd in part and rev'd in part on other grounds, 98 N.J. 555 (1985). In Steinberg, a case on which plaintiff relies, the plaintiff actually pleaded gross negligence, unlike plaintiff. 226 N.J. at 348 (noting the plaintiff had filed a lawsuit "alleging that his injuries were caused by [the defendant's] gross negligence"). In Bustamante v. Borough of Paramus, 413 N.J. Super. 276, 282 (App. Div. 2010), another case on which plaintiff relies, the plaintiff filed a cross-motion to amend the complaint in response to the defendant's summary-judgment motion – something plaintiff did not do.

Pursuant to Rule 1:6-2(a), a motion "other than one made during a trial or hearing, shall be by notice of motion in writing unless the court permits it to be made orally." Plaintiff's oral application to amend the pleadings to add a new cause of action was not made during a trial or hearing but during oral argument of defendant's summary-judgment motion. Rule 1:6-3(a) requires motions to be filed and served sixteen days "before the specified return date unless otherwise provided by court order." Pursuant to Rule 4:9-1, after a responsive pleading has been filed, a party may amend a pleading "by written consent of the adverse

party or by leave of court." The motion for leave to amend "shall have annexed thereto a copy of the proposed amended pleading." Ibid. Rule 4:9-1 clearly contemplates a written motion.[3]

We see no abuse of discretion in the motion judge's refusal to hear plaintiff's unnoticed oral application to amend the complaint. As the judge held, plaintiff's oral application was improper, not provided for in the rules, and simply unfair.

In addition, even if we view the alleged facts in the light most favorable to plaintiff, she has not pleaded a viable claim of gross negligence. Participants of a hot yoga class are going to sweat. Allowing some sweat to accumulate on the floor during a class is not grossly negligent. Nor is it grossly negligent to dim the light in the room.

## C.

In sum, we affirm the motion judge's decision to grant defendant's motion for summary judgment based on the exculpatory clause of the parties' contract and to decline to hear plaintiff's oral application for leave to amend the

---

[3] Plaintiff relies on and quotes Rule 4:9-2 but omits its first sentence, which makes clear that the rule applies to issues "tried by consent or without the objection of the parties," circumstances that do not apply to this case.

complaint. Having so held, we also find no abuse of discretion in the motion judge's denial of plaintiff's motion for reconsideration and affirm that decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-3229-19